IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

KEVIN MAURICE WILLIAMS,

              Plaintiff

    VS.                                NO. 5:05-CV-310 (CAR)

MRS. CANTY, *et al.*,

              Defendants        **PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE**

# RECOMMENDATION

        Plaintiff KEVIN MAURICE WILLIAMS filed the instant §1983 action in which he claims that the defendants — officers and administrators at the Georgia Diagnostic and Classification Prison in Jackson, Georgia where Williams was incarcerated — violated his Eighth Amendment right to be free of cruel and unusual punishment. The plaintiff was originally proceeding *pro se*, but after reviewing the claim, the undersigned — the full time United States Magistrate Judge to whom this case has been referred for consideration — appointed counsel for him. After denying the defendants' first MOTION FOR SUMMARY JUDGMENT without prejudice (Tab #46), the court re-opened discovery.

        Currently pending before the court is the defendants' [second] MOTION FOR SUMMARY JUDGMENT. Tab #78. Plaintiff Williams has responded to the defendants' motion (Tab #85), and the defendants have replied to the plaintiff's response. Tab #101.

# SUMMARY JUDGMENT STANDARD

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

**FACTS**

In the light most favorable to the plaintiff, the evidence before the court shows that in March of 2005, plaintiff Williams ruptured his Achilles tendon while playing basketball. On March 16, 2005, Dr. C. Thomas Hopkins, Jr. performed an Achilles tendon repair on Williams. While recovering from the operation, Williams was given medical profiles for low bunk, low tier, cell feed, and wheelchair for long distances. On May 16, 2005, Williams saw Dr. Hopkins for a follow up, and his foot was put in a plastic boot called a fracture walker. Dr. Hopkins prescribed Percocet, a Schedule II narcotic, for the plaintiff's pain, and ordered that Williams should bear weight on his injured foot as tolerated. A follow up was scheduled in another month. Dr. Hopkins did not provide any orders regarding where Williams should be housed or whether Williams could safely navigate a staircase.

On June 3, 2005, in order to make room in the lower tier for an inmate who was coming out of the infirmary, prison authorities discontinued Williams' medical profiles and ordered him to move to a bed on the second tier. The only way to the second tier of the prison was by using one of two staircases, each of which consisted of thirty steps, which staircases are divided in half by a landing. Prior to discontinuing plaintiff's medical profiles, no medical professional examined Williams to determine if he would be able to safely walk up and down stairs while wearing the fracture walker.

---

[1]*See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

When he was ordered to move, Williams objected and told the officials that he would not be able to navigate a staircase without falling. Nevertheless, after being threatened with disciplinary action if he did not comply, Williams moved to the second tier. Later that day, on his way to eat, Williams fell as he was going down the stairs, thereby exacerbating a pre-existing spinal condition.

Williams was seen in medical for his fall, and an on-call doctor ordered that he be given a Darvocet for his pain at that time and another in twelve hours. The nursing assessment related to this trip to medical states that Williams should be given 24 hour bed rest and should not bear weight on his foot. Williams was then returned to his top tier cell assignment where he was unable to climb into his bed; he remained on the concrete floor overnight.

The following day, Saturday June 4, 2005, unable to move to his bed, Williams remained on the floor. When defendant Canty — a prison guard — made her rounds, Williams explained his predicament to her, telling Canty that he could not get down the stairs to eat or to get his pain medication. Canty denied his requests for assistance and left him on the floor of his cell where he remained through the weekend.

On Monday, June 6, 2005, a prison guard (not Canty) assisted Williams to a wheelchair and Williams went to medical to have his prescription filled. He later went to the mess hall where he received his first meal since Friday, June 3rd.

For some time after the fall, Williams was prescribed narcotics to combat the pain he was experiencing in his back as a result of the fall.

## DISCUSSION

Based on the facts outlined above, plaintiff Williams has set forth two separate causes of action pursuant to the Eighth Amendment. The first alleges that the defendants were deliberately indifferent to his serious medical needs when they caused him to be transferred upstairs while he was wearing a boot and could not tolerate weight on his foot. The second Eighth Amendment claim deals with denial of food and pain medicine over the course of a weekend.

### 1. The Move and Fall

In order to determine whether plaintiff Williams' Eighth Amendment rights were violated, the court must determine whether forcing an inmate who is wearing a boot while recovering from surgery and unable to put any weight on that booted foot to scale a staircase eight to twelve times per day would be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1485, 1505 (11th Cir. 1991) (quotations and citation omitted.)

It is clearly established that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal punctuation and citations omitted).

Taken in the light most favorable to plaintiff Williams, each of the defendants in this case had a subjective knowledge of a risk of serious harm: They all knew that his medical profiles were taken away only to make room for another inmate rather than because Williams had actually reached a point in his rehabilitation where it would be safe for him to go up and down stairs. Williams himself had also made clear to the guards who were moving him that he did not feel that he would be able to safely go up and down stairs. The defendants then forced Williams — with threats of disciplinary action if he did not comply — to move to an upstairs cell which would require him to walk up and down stairs upwards of eight times per day.

The defendants have cited *Williams v. Morales*, Case No. CV 01-08473-JFW (C.D. Cal., April 13, 2005) as persuasive authority. In *Williams*, an inmate-plaintiff whose doctors had assigned a lower tier, lower bunk medical profile was transferred to a second tier cell and fell down the stairs as he was ascending them. The district court found that although the plaintiff had profiles that called for lower tier, the profile did not necessarily restrict the plaintiff's actual climbing of stairs, and that the guards were not on notice that he was restricted from doing so. Also offered into evidence in that case was uncontroverted evidence that the plaintiff had been observed visiting his friends on the second tier many times. In affirming the district court's granting of summary judgment for the defendants in that case, the Ninth Circuit noted both of those factual findings — the lack of specific information regarding the plaintiff's medical restriction of navigating stairs, and the fact that the plaintiff had previously ascended the stairs on his own volition. *Williams v. Morales*, 182 Fed. Appx. 687 (9th Cir. 2006).

Those two factual findings distinguish *Williams* from the case at hand: In the instant case, the plaintiff specifically told the defendants that he could not go up and down stairs, and the defendants could see a protective boot on his foot which would make it obvious that scaling steps would be a legitimate concern. Moreover, there is no evidence that plaintiff Kevin Maurice Williams ever climbed stairs between his surgery and when he was moved. While the defendants have provided the deposition of defendant Canty, which includes allegations about the plaintiff's ability to walk, Canty's deposition says nothing about his ability to climb stairs.

Defendant Canty also alleges that she saw the defendant playing basketball one or two times while he was in his cast. But her observations were that he boasted about his ability to "dribble the ball, [] do this, [and] do that." Deposition of Coby Canty, Tab #78-6 at 16 of 35. It is entirely possible that defendant Canty's observation of Williams' "playing basketball" included nothing more than Williams dribbling and shooting the ball without any movement. That certainly does not demonstrate an ability to safely go up and down stairs on a regular basis. Because the facts are sufficiently different, the undersigned does not find *Williams* particularly persuasive with respect to the instant case.

Another circuit, in another unreported opinion, gives us *Henard v. Green*, 10 Fed. Appx. 357 (7th Cir. 2001). In *Henard*, the inmate-plaintiff [Henard] reported having breathing problems and asked a guard [Green] for medical assistance. At the super-maximum security prison in which Henard was housed, officers were required to restrain prisoners with hand cuffs and shackles before removing them from their cells, and the plaintiff was so restrained. Henard fell down the stairs on his way to medical. In support of his response to the defendants' motion for summary judgment, Henard submitted an affidavit which asserted that he told the defendant that "he was having 'serious' trouble breathing, that he was 'very weak and dizzy' and that he needed a wheelchair because he could not stand or walk." *Id.* at 360. Henard's affidavit also asserted that it was normal for an inmate who was having breathing troubles to be examined in their cells rather than be transported to medical. The Seventh Circuit came to the following conclusion:

> A jury that believed Henard instead of Green reasonably could conclude that Green knew of a substantial risk that Henard could not make it down the stairs by himself, but acted with deliberate indifference when he restrained Henard and took him to the stairs instead of having him examined in his cell. Granting summary judgment in favor of Green was premature.

*Id. at* 361.

The undersigned believes that the factual circumstances in the case at bar are sufficiently similar to those in *Henard* to warrant presenting plaintiff Williams' claims to a jury. If a jury believes that the plaintiff's medical profiles were taken away without any concern for his well-being and that the plaintiff had repeatedly told the defendants that he could not safely navigate stairs while pointing at a plastic boot on his feet, the jury could conclude that the defendants knew of a substantial risk and acted with deliberate indifference when they forced him to move to the upper tier.

The defendants have attempted to point the finger among themselves and among non-defendants in an effort to show that none of them was individually deliberately indifferent toward Williams' well-being: They aver that a non-defendant physicians assistant was the person who actually discontinued Williams' medical profiles and that all defendant Dr. Fowlkes did was sign off on that decision, constituting mere negligence rather than deliberate indifference. They argue that since the medical profiles had been removed, the remaining defendants simply did what they had been ordered to do by some other non-defendants who were in the ID room (who based their decision on the fact that Williams no longer had any medical profiles).

The defendants essentially make the argument that since there are so many people involved in the process of determining whether an inmate is moved, none of them can individually be held responsible for the final decision that he should be moved. This argument is not convincing.

Williams has sued the individuals who convened outside his cell and made the determination that he be moved. This group included Coby Canty (a guard who was the first to attempt to order Williams to move), Dr. Fowlkes (whose signature allowed Williams' profiles to be discontinued), Betty Lance (the deputy warden of care and treatment at the prison), and Edward Youngberg (the unit manager). Further factual development is necessary in order to determine which, if any or all, of those defendants were responsible.

## 2. The Weekend

Again resolving all disputed facts in favor of plaintiff Williams, the plaintiff fell on a Friday and went to medical where he received prescription pain medication and was given a profile for 24 hour bed rest and a prescription to receive a second dose of pain medication. When he got back to his cell, Williams could not manage to climb into his bed, so he remained on the concrete floor. Over the course of the weekend, defendant Canty walked by the plaintiff's cell numerous times, and each time she passed by, Williams would plead with her to take him to medical, get his pain medication, and provide food for him. Canty refused to provide any assistance. As a result, Williams was left writhing in pain (for which he had been prescribed him a Schedule II narcotic) on a concrete floor while not being permitted to eat for more than two days.

If true, the plaintiff's allegations clearly demonstrate deliberate indifference on behalf of defendant Canty as determined by any standard, including those used in *Harris* and *McElligott*. Judgment is therefore inappropriate at this time. Even if the denial of food over the course of two days represents a *de minimis* injury, as the defendants claim, when the denial of food is taken in conjunction with the claims of denial of pain medication, the denial of food becomes an aggravating factor and judgment for the defendants is not appropriate as to any of the plaintiff's claims.[2]

---

[2] Neither the Eleventh Circuit nor the United States Supreme Court has dealt with a denial of food for a two day period in an Eighth Amendment context. However, at least two circuits have found that situations similar to the one at hand present a constitutional violation. *See Simmons v. Cook*, 154 F. 3d 805 (8th Cir. 1998) (holding that paraplegic inmates' Eighth Amendment rights were violated when, along with other factors, the inmates were denied access to four consecutive meals because they could not wheel themselves to the area where food was being provided); and *Dearman v. Woodson*, 429 F. 2d 1288 (10th Cir. 1971) (declining to hold that 50 ½ hours of starvation was not cruel and unusual punishment).

## QUALIFIED IMMUNITY

Every defendant has asserted that they are immune from suit based on qualified immunity. A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," then qualified immunity does not apply. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Because the elements of deliberate indifference are clearly established, in light of the above analysis the undersigned believes that none of the defendants is entitled to qualified immunity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendants' motion for summary judgment includes an allegation that the plaintiff did not exhaust the administrative remedies available to him within the prison grievance and appeal system. The plaintiff filed a response in which he avers that he repeatedly asked for an appeal form but was never given one. The defendants filed a reply but did not address the plaintiff's contentions herein. The facts before the court show that Williams filed an informal grievance and a formal grievance in which he put the prison on notice of the basic facts and circumstances involved in the instant suit. Though he attempted to file an appeal, Williams was never provided with the forms necessary to do so. The defendants have not provided any evidence that Williams had an available administrative remedy that he left unexhausted. Accordingly, this case is properly before this court.

**CERTAIN CLAIMS ABANDONED BY PLAINTIFF**

The defendants' Motion for Summary Judgment includes arguments regarding the plaintiff's being placed in Cell 16 which is occasionally used to house death row inmates and defendant Youngberg's threatening to write up plaintiff Williams if he did not move. Plaintiff's response does not address either of these contentions, and counsel for the plaintiff has advised the undersigned that plaintiff Willaims is not pursuing either of those claims as independent causes of action. Accordingly, to the extent that the defendants are requesting summary judgment on these specific claims, IT IS RECOMMENDED that their motion be **GRANTED**.

**CONCLUSION**

In light of the above analysis, the undersigned finds that further factual development is necessary and that summary judgment as to all remaining issues is not appropriate. Accordingly, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **DENIED** except as stated above.

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to these RECOMMENDATIONS with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO ORDERED AND RECOMMENDED this 8th day of FEBRUARY, 2008.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE